UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MAINE

|  |  |
|---|---|
| Hearing Date: | October 3, 2013 |
| Hearing Time: | 10:00AM EDT |
| Location: | Bangor |
| Objection Date: | September 12, 2013 |

In re  )
       )
       )  CHAPTER 11
MONTREAL MAINE & ATLANTIC  )  CASE NO. 13-10670-LHK
RAILWAY, LTD.  )
       )
       Debtor  )
_____)

## WRONGFUL DEATH CLAIMANTS' MOTION
## FOR FORMATION OF CREDITORS' COMMITTEE

The representatives of the probate estates of Marie Semie Alliance, Stephanie Bolduc, Yannick Bouchard, Marie France Boulet, Karine Champagne, Marie-Noelle Faucher, Michael Guertin, Jr., Stephanie Lapierre, Joannie Lapointe, Marianne Poulin, Martin Rodrique, Jean Pierre Roy, Kevin Roy, Melissa Roy, Andree-Anne Sevigny, Jimmy Sirios, Elodie Turcotte and Joanie Turmel – each of them killed in the massive explosion in Lac Megantic, Quebec, on July 6, 2013, resulting from derailment of a train operated by the Debtor (the "Disaster") – hereby move pursuant to Section 1102(a)(2) of the Bankruptcy Code for this Court to direct the Office of the United States Trustee (the "UST") to appoint a committee of wrongful death and personal injury claimants. The 18 movants, who are represented in their wrongful death claims by Attorney Peter Flowers, are listed in Exhibit A to this motion. The movants have been informed that 15 other decedents' representatives, whose counsel for their wrongful death claims is Attorney Jason Webster,[1] will file a joinder to this motion. The movants encourage any

---

[1] Mr. Webster's clients who have brought suit in Illinois are using Mr. Flowers as local counsel in those actions.

additional decedents' representatives to join in this motion and/or seek membership on the committee of wrongful death and personal injury claimants if this motion is granted.

The movants have conferred about the relief sought by this motion with Stephen Morrell, Esq. of the UST, who promised to start the process of obtaining the UST's position, but could not state a position at this time. The movants have also conferred with Robert Keach, Esq., the newly appointed trustee of the Debtor, who explained that he was not yet prepared to take a position on the relief sought by this motion.

In support of this motion, the movants state:

1. Section 1102(a)(2) of the Bankruptcy Code provides for appointment of official committees in Chapter 11 cases "if necessary to assure adequate representation of creditors . . . ." 11 U.S.C. § 1102(a)(2). While Section 1102(a)(1), requiring automatic appointment of an unsecured creditors' committee, does not apply in a railroad reorganization,[2] Congress has left undisturbed the discretion of this Court to appoint committees where necessary to assure adequate representation of a creditor constituency. 7 Collier on Bankruptcy ¶ 1102.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012). The need for an official committee to represent wrongful death and personal injury claimants in this case is clear for the following reasons:

2. ***Wrongful death and personal injury claimants will be by far the largest creditor constituency in this case.*** The Debtor has acknowledged $33.5 million of secured debt together with unsecured trade payables of $3.5 million. Given the horrific circumstances of the Disaster and the Debtor's role in it, wrongful death verdicts in the hundreds of millions of dollars can be expected.

---

[2] 11 U.S.C. § 1161.

2

3.     ***Elemental fairness requires appointment of a committee to represent wrongful death and personal injury claimants.*** "[T]ort victims are involuntary creditors who did not elect to work for, do business with, or purchase the securities of a railroad." Id. at ¶ 1171.01 The decedents were unsophisticated individuals who happened to be in a small-town café when it, and they, were incinerated by the Debtor's runaway train. Their estate representatives are, for the most part, family members or friends of the decedents, living in Canada far from the location of this Court, and themselves not familiar with American bankruptcy law. Appointment of the requested committee fulfils the very purpose of Section 1102, which is to provide an effective voice to creditors for whom individual participation in the Chapter 11 case is impractical.

4.     ***Formation of an official committee to represent wrongful death and personal injury claimants will benefit the bankruptcy estate by solving otherwise difficult issues of due process.*** Like all creditors, bodily injury claimants have the right to receive reasonable notice and an opportunity to be heard on matters in this case that affect their interests. Absent formation of a committee, satisfying requirements of due process in respect of wrongful death and personal injury claimants could prove to be a nightmare for the bankruptcy estate. Providing all bodily injury claimants with every notice and motion in this case may not practical, and it is far from clear that bombarding a group of foreigners, who may or may not understand English, with American legal documents on nearly a daily basis would constitute due process or harassment. The usual practice in Chapter 11 cases where no committee has been formed of providing notice solely to the largest among similarly-situated creditors does not work for bodily injury claimants because their claims are unliquidated. For some of these challenges, work-arounds could conceivably be developed. However, the most humane, reasonable and effective

way to provide due process for wrongful death and personal injury claimants would be to form an official committee to actively participate in this Chapter 11 case on their behalf.

5. ***Formation of a committee of bodily injury claimants will greatly enhance the likelihood of a successful Chapter 11 case.*** Confirmation of a Chapter 11 plan will require support from wrongful death and personal injury claimants. Section 1171(a) of the Bankruptcy Code provides that wrongful death and personal injury claims, including those arising prepetition, are entitled to payment as administrative claims. Under the similar provision of prior law, these claims would in the course of the receivership or reorganization be liquidated and paid in monthly installments, with interest, prior to confirmation of a plan. *See* In re Central Railroad Company of New Jersey, 479 F.2d 424 (3d Cir. 1973).[3] If, as seems inevitable because of the amount they are owed, bodily injury claimants remain unpaid at the time a plan is considered for confirmation, the plan may not be confirmed without paying them the full amount they are owed, in cash, on the effective date of the plan *except to the extent that they otherwise agree.* 11 U.S.C. § 1129(a)(9)(A). There are many reasons why wrongful death and personal injury claimants might otherwise agree. However, agreements require negotiations, and negotiations require adequate representation of the parties, which, in the case of wrongful death and personal injury claimants, only an official committee can assure. In sum, formation of an official committee will benefit the bankruptcy estate by providing a negotiating partner in connection with the Chapter 11 plan and other aspects of this case – thus enhancing the likelihood of a successful outcome.

6. ***Appointment of an official committee of wrongful death and personal injury claimants is in the best interest of all constituencies.*** By promoting active and effective participation by bodily injury claimants in the Chapter 11 case, an official committee will serve

---

[3] Central Railroad involved personal injury claims of the railroad's employees. In enacting the Bankruptcy Code in 1978, Congress expanded the priority of wrongful death and personal injury claims to include non-employees. 8 Collier on Bankruptcy ¶ 1171.01.

the interests not only of its own constituency but of others as well. The prospect of being sued in the tort system, probably in many different lawsuits in multiple jurisdictions, cannot be comforting to the Debtor's affiliates and other parties that might share the Debtor's liability for claims arising from the Disaster. These constituencies will benefit by utilizing the orderly and efficient process, and the certainty of closure, that a consensual Chapter 11 plan can provide in the mass tort context, as a far superior alternative to the risk of being subject to uncertainty, duplication of effort, inconsistent results, indefinite duration and ever-burgeoning expense in the tort system. In sum, parties that potentially share liability for the Disaster should welcome the opportunity to deal with bodily injury claimants inside the Chapter 11 tent, rather than outside.

7. ***There is strong support among wrongful death and personal injury claimants for appointment of an official committee to represent them.*** The Disaster is publicly reported to have killed 47 people. Of these, 33 of their estates are movants or will be joining in this motion. Thus, this Court and the other constituencies in this Chapter 11 case can expect that the committee will be a representative and effective voice for wrongful death and personal injury claimants.[4]

8. ***To be effective, the committee must solely represent solely wrongful death and personal injury claimants*** The movants seek a committee that will solely represent wrongful death and personal injury claimants, as distinct from a committee that would have a fiduciary duty to general unsecured creditors and/or other claimants. It has become standard practice in mass tort cases to appoint a committee representing only bodily injury claimants, even when property damage and/or non-tort unsecured creditors have committee representation as well

---

[4] This assumes that the UST will appoint a committee that is truly representative of wrongful death claimants. In the unlikely event of an issue in this regard, this Court has the authority under Section 1102(a)(4) of the Bankruptcy Code, in a railroad reorganization to the same extent as in other Chapter 11 cases, to change the membership of a committee. *Cf.* 11 U.S.C. § 1161 (listing the provisions of Chapter 11, not including 1102(a)(4), that do not apply in railroad cases).

(through separate committees).[5] This practice reflects the distinct interests of bodily injury claimants in mass tort cases. In this case, it is particularly clear that wrongful death and personal injury claimants and general unsecured creditors have severely conflicting interests. First, as described above, wrongful death and personal injury claimants have the statutory priority of administrative expenses, not general unsecured claims. Second, wrongful death and personal injury claimants are almost certainly covered by insurance that is unavailable to trade claimants. Third, wrongful death and personal injury claimants have claims against wrongdoers other than the Debtor, which may be affected by orders entered or a plan confirmed in this Chapter 11 case. Fourth, wrongful death and personal injury claimants have the right for their claims to be determined by jury trial, pursuant to 28 U.S.C. § 1411(a), which provides in pertinent part that "title 11 do[es] not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim."[6] No doubt there are other differences as well between the position of bodily injury claimants and general unsecured creditors in the context of this case. Forming a single committee to represent both groups would assure the committee's inability to represent either group.

---

[5] *See, e.g.,* In re Dow Corning Corp., 280 F.3d 648, 654 (6th Cir. 2002) (referring to official committee of tort claimants of silicon breast implants); In re Federal-Mogul Global, Inc., 300 F.3d 368, 377 (3d Cir. Del. 2002) (referring to official committee of asbestos claimants); In re A.H. Robins Co., 828 F.2d 239 (4th Cir. 1987) (referring to committee of Dalkon Shield personal injury claimants); In re W.R. Grace & Co., 476 B.R. 114 (D. Del. 2012) (referring to official committee of asbestos personal injury claimants and a separate official committee of asbestos property damage claimants); In re G-I Holding, Inc. , 306 B.R. 746 (S.D.N.Y. 2004) (referring to official committee of asbestos claimants).

[6] The rights of bodily injury claimants are materially different not only from the rights of non-tort creditors but also from those of property damage claimants. For example, property damage claimants do not have the right for a jury to adjudicate their claims in this case (as with all creditors outside the scope of 28 U.S.C. § 1411(a), property damage claimants waive their jury trial right by filing a proof of claim) nor do property damage claims enjoy administrative expense priority. Moreover, it is a common occurrence in mass tort cases for the insurance rights of property damage claims to differ materially from those of bodily injury claimants; however, the movants are not sufficiently familiar with the Debtor's insurance coverage to address this issue in the context of this particular case.

WHEREFORE, the movants pray that this Court direct the Office of the United States Trustee to appoint an official committee of wrongful death and personal injury claimants in this case.

        Marie Semie Alliance, *et al.*

        By their attorneys,

        /s/ George W. Kurr, Jr.
        George W. Kurr, Jr.
        GROSS, MINSKY & MOGUL, P.A.
        23 Water Street, Suite 400
        P. O. Box 917
        Bangor, ME 04402-0917
        Phone: (207) 942-4644 ext. 206
        Fax: (207) 942-3699
        gwkurr@grossminsky.com

        and

        Daniel C. Cohn, *pro hac vice admission pending*
        Taruna Garg, *pro hac vice admission pending*
        MURTHA CULLINA LLP
        99 High Street, 20th Floor
        Boston, Massachusetts 02110
        Phone: (617) 457-4000
        Fax:    (617) 482-3868

        Peter J. Flowers, *pro hac vice admission pending*
        MEYERS & FLOWERS, LLC
        3 North Second Street, Suite 300
        St. Charles, IL 60174
        Phone: (630) 232-6333
        Fax: (630) 845-8982