**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>MONTREAL MAINE & ATLANTIC RAILWAY, LTD.<br><br>Debtor. | Bk. No. 13-10670<br>Chapter 11 |

**CHAPTER 11 TRUSTEE'S MOTION FOR ORDER: (A) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING; AND (B) GRANTING TO CAMDEN NATIONAL BANK POST-PETITION SECURITY INTERESTS**

Robert J. Keach, the chapter 11 trustee (the "Trustee") appointed in the above-captioned chapter 11 bankruptcy case of Montreal Maine & Atlantic Railway, Ltd. (the "Debtor"), moves (the "Motion") this Court for an order approving certain post-petition borrowing (the "Loan"), pursuant to sections 105 and 364 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 4001 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and D. Me. LBR 4001-4, between Camden National Bank (the "Bank") and the Debtor, upon the terms set forth in the Commitment Letter (the "Commitment Letter"), a copy of which is attached hereto as **Exhibit A**. In support of this Motion, the Trustee states as follows:

**I.    Introduction with Summary of Loan Terms Pursuant to Bankruptcy Rule 4001(d)(1)(B)**

1.    By this Motion, the Trustee seeks authority for the Debtor to obtain financing from the Bank on the terms set forth in the Commitment Letter and summarized below:

    a.  The Loan is structured as a revolving line of credit in the maximum amount of **$3,000,000.00**. [Commitment Letter, ¶ 2].

    b.  The interest rate is fixed at **5.00%** per annum on any amounts advanced under the Loan. The default rate shall be 18.00% per annum. [Commitment Letter, ¶ 6].

1

 c. The proceeds of the Loan shall be used for working capital needs of the Debtor. The proceeds shall not be used for payment of prepetition debt, except prepetition debt required to be paid under the Bankruptcy Code or authorized to be paid by the Bankruptcy Court, provided, however, that such amounts of prepetition debt shall not exceed $250,000.00 absent the Bank's written consent. The proceeds shall not be used to pay the costs of administration of the Debtor's chapter 11 case, other than ordinary and necessary costs of operating the Debtor's business, absent the Bank's written consent. [Commitment Letter, ¶ 3].

 d. The maturity date is **August 30, 2014**; interest is payable monthly. [Commitment Letter, ¶ 5].

 e. The Loan shall be secured by a first mortgage and security interest on all assets, located in the United States, that secure the debt administered by the Federal Railroad Administration (the "FRA"), as described more fully below, including an assignment of leases and rents with respect to the real property located in the United States. [Commitment Letter, ¶ 4]. In the event that the Loan is not paid in full on or before August 30, 2014, the Trustee shall, and shall be authorized by the Order approving the Loan to, liquidate, under section 1174 of the Bankruptcy Code, the Loan Collateral or such portion thereof as is required to pay the Loan in full.

 f. Closing of the Loan is contingent on certain conditions being satisfied, including, but not limited to: (i) entry of a final order by this Court approving the Loan; (ii) entry of an order by this Court, or entry into debt subordination/standstill agreements with all necessary creditors, providing for subordination to the Bank; (iii) satisfactory completion of due diligence by the Bank; (iv) maintenance of adequate insurance by the Debtor; and (v) preparation of loan documents as specified in the Commitment Letter. [Commitment Letter, ¶ 14].

 g. The Debtor shall indemnify the Bank from and against any loss to the Bank as a result of past, present, or future transportation of hazardous or toxic materials, or disposal of such materials and/or noncompliance with environmental laws or orders. [Commitment Letter, ¶ 17].

 h. Upon the occurrence and during the continuance of any default, and following the giving of ten (10) business days' notice to the Debtor, the Bank shall have relief from the automatic stay. [Commitment Letter, ¶ 11].

    i. The terms of the Loan do not contain any of the provisions listed in Bankruptcy Rule 4001(c)(1)(B)(ii), (iii), (v), (vi), (vii), (viii), (x), or (xi).

    j. The Loan shall be used to finance ongoing operations of the Debtor and, MMA Canada, its Canadian affiliate in substantially in accordance with the budget and projections attached hereto as **Exhibit B.**

2. Under 11 U.S.C. § 364(d), in order to obtain a priming lien, the Debtor is required to adequately protect the interests of the FRA. The Trustee anticipates that the United States, on behalf of the FRA will not object to the terms of the Loan, and, specifically, subordination of its interest in the FRA Collateral (as defined below) located in the United States to permit the Bank to have a first priority interest in such collateral.[1] The position of the United States in this regard is premised on the condition that the proceeds of the Loan shall be used, among other things, to provide for a minimum of two-person crews on all trains operated by the Debtor, and the Trustee hereby commits to the satisfaction of that condition. Additionally, after a diligent search and exploration of alternatives, the Debtor is unable to obtain financing without granting a first lien on its property, and is unable to obtain financing on terms as favorable as those offered by the Bank. Accordingly, the Trustee submits that the requirements of section 364(d), to the extent applicable, have been met.

## II.    Jurisdiction, Venue and Statutory Basis for Relief

3. The United States District Court for the District of Maine (the "District Court") has original but not exclusive jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b).

---

[1] The Trustee is also in the process of obtaining the consent of the Maine Department of Transportation ("MDOT"), which has a security interest in all rail, related cross ties, and related track materials incorporated or installed in, attached to, or located on certain rail corridors owned by the Debtor and located in Maine, the purchase of which rail and related materials was funded by funds advanced under certain Rail Funding Agreements entered into with the Debtor, to the extent MDOT's collateral is affected by the terms of the Loan. The Debtor anticipates that MDOT will consent.

3

Pursuant to 28 U.S.C. § 157 and Rule 83.6 of the District Court's local rules, the District Court has authority to refer and has referred this chapter 11 case to this Court.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has constitutional authority to enter final judgment in this proceeding.

5. Venue over this chapter 11 case is proper in this district pursuant to 28 U.S.C. § 1408, and venue over this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

6. The relief sought in this Motion is predicated upon sections 105(a) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 4001(d)(1)(B) and 9013, and D. Me. LBR 4001-4.

### III. Background

#### A. General Background

7. On August 7, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under 11 U.S.C. § 101 et seq. (the "Case"). The Debtor's bankruptcy filing was precipitated by the train derailment in Lac-Mégantic, Québec on July 6, 2013 (the "Derailment"). The Derailment set off several massive explosions, destroyed part of downtown Lac-Mégantic, and is presumed to have killed 47 people. The Derailment also precipitated the filing by Montreal Maine & Atlantic Canada Co. ("MMA Canada"), MMA's subsidiary, under Canada's Companies' Creditors Arrangement Act.

8. On August 21, 2013, the United States Trustee appointed the Trustee pursuant to 11 U.S.C. § 1163.

#### B. Pre-Petition FRA Financing

9. Prior to the Petition Date, the Debtor entered into a $34,000,000.00 loan facility with FRA, pursuant to that certain Loan and Security Agreement dated March 24, 2005, as such agreement may have been amended, modified, renewed or extended from time to time (the "FRA

4

Credit Facility"). The FRA Credit Facility was issued pursuant to Title V of the Railroad Revitalization and Regulatory Reform Act of 1976, as amended, 45 U.S.C. § 821 et seq. The outstanding balance on the FRA Credit Facility, as of the Petition Date, was approximately $28,000,000.00.

10. The Debtor's obligations to FRA under the FRA Credit Facility are secured by the following:

   a. A first-priority mortgage on substantially all of the Debtor's real property located in Maine and Vermont, including the U.S. rail corridor consisting of approximately 220.73 miles of track located in Maine and an estimated 23.47 miles of track located in Vermont, as well as various land and buildings owned by the Debtor in fee simple (the "U.S. Real Property");

   b. A first-priority security interest in all rail lines and related tracks and improvements located within the United States, including all rail ties, bridges, and related assets (the "U.S. Personal Property");

   c. All of the Debtor's real property located in Québec, Canada;

   d. All of the Debtor's shares in MMA Canada;

   e. All of the real property owned by MMA Canada and located in Québec, Canada; and

   f. All of MMA Canada's personal property (collectively, the "FRA Collateral").

11. All mortgages and security agreements securing the FRA Credit Facility were timely and properly perfected by recordings in the United States and Canada.

**C. The Pending Financing Transaction**

12. After the Petition Date, and subsequent to the appointment of the Trustee, the Trustee began negotiations with the Bank about the Bank providing post-petition financing needed to fund the Debtor's operating costs and working capital needs pending a sale of the

5

Debtor's assets. As a result of these negotiations, the Debtor received the Commitment Letter, which outlines the terms of the Loan in the principal amount of up to $3,000,000.00.

13. The Loan will be secured by first priority positions on the U.S. Real Property and the U.S. Personal Property (collectively, the "Loan Collateral"). As stated above, the Loan Collateral is subject to the first-priority interest of the FRA in connection with the FRA Credit Facility. The Trustee anticipates that the United States on behalf of the FRA will not object to subordination of its interest in the Loan Collateral to the Bank, thereby permitting the Bank to have a priming lien on the Loan Collateral.

14. The Loan will ensure that the Debtor and MMA Canada have adequate working capital to continue operating pending a sale of their assets.

## IV. Relief Requested

15. By this Motion, the Trustee seeks entry of an order: (i) approving the terms of the Loan upon the terms set forth herein, in the Commitment Letter, and in the related loan documents, which loan documents shall substantially reflect the terms of the Commitment Letter and shall be filed with this Court as soon as they are finalized; (ii) granting the Bank a first priority mortgage on the U.S. Real Property; (iii) granting the Bank a first priority security interest in the U.S. Personal Property; (iv) authorizing the Debtor to provide the Bank with an assignment of leases and rents relating to the U.S. Real Property; (v) determining that, to the extent applicable, the requirements of section 364(d)(1)(B) have been satisfied; and (vi) finding that the Bank acted in good faith in relation to the Loan under section 364(e) of the Bankruptcy Code.

**V.    Basis for Relief**

16.    Pursuant to section 364(d) of the Bankruptcy Code, a debtor may only incur debt secured by a senior lien on property of the estate that is already subject to a lien if, after notice and a hearing, the debtor is able to show that (a) despite the post-petition borrowing, "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted," and (b) that the debtor was unable to obtain a loan by offering the protections afforded under any other subsection of section 364 of the Bankruptcy Code.  11 U.S.C. § 364(d)(1).  Courts generally defer to a debtor's business judgment in granting post-petition financing under section 364(d).  See In re DB Capital Holdings, LLC, 454 B.R. 804, 822 (Bankr. D. Colo. 2011) (citing cases).

17.    In this case, the Trustee anticipates that the United States on behalf of the FRA will not object to the terms of the Loan, and, specifically, to subordination of its interest in the Loan Collateral to the Bank.   The position of the United States in this regard is premised on the condition that the proceeds of the Loan shall be used, among other things, to provide for a minimum of two-person crews on all trains operated by the Debtor, and the Trustee hereby commits to the satisfaction of that condition.  Additionally, to the extent that MDOT's collateral is affected by the Loan, the Trustee anticipates that MDOT will consent to the terms of the Loan.  In any event, even absent such consent, the interests of both FRA and MDOT are adequately protected.  Accordingly, the Trustee submits that, to the extent required, section 364(d)(1)(B) is satisfied.

18.    With respect to whether the debtor or trustee is unable to obtain a loan by any method other than having such credit secured by a senior lien on previously encumbered

7

property, the debtor or trustee has "no duty to seek credit from every possible lender." Snowshoe, 789 F.2d 1085.

19. The Trustee approached other potential lenders, including existing lenders, in an attempt to obtain post-petition financing; ultimately, however, the Trustee was unable to obtain financing on more favorable, or expeditious, terms, than the Loan.

20. Additionally, in light of the number, and extent, of priority and general unsecured claimants in this Case, the Trustee was only able to obtain financing on a secured basis. Further, the Trustee submits that the Loan will not prejudice any creditors or parties in interest because it will ensure that the Debtor is able to continue operating, pending a sale, which sale will maximize the value of the Debtor's assets and its estate for the benefit of those creditors. The Loan is essential to maximize the value of the distributions to creditors, including priority and general unsecured creditors.

21. Finally, although the Debtor owns some assets that are not otherwise encumbered, such assets are insufficient to secure the financing necessary to continue operations pending a sale.

22. The Loan is also within the sound business judgment of the Trustee. The proceeds of the Loan will fund the Debtor's working capital and operational needs pending a sale of its assets. The terms of the Loan are favorable to the Debtor and the Loan is secured by collateral that was already pledged by the Debtor to FRA, prepetition. In the absence of approval of the Loan, the Debtor may run out of sufficient cash before the end of October, 2013 and be forced to wind-down or abandon its operations. In addition, uncertainty over the state of the Debtor's liquidity and financing is resulting in a substantial loss of business, as shippers need to know that their cargo will reach its destination rather than being stranded by a suspension of

8

operations. Moreover, financing of the operations of the Debtor and MMA Canada is a critical aspect to the extension of MMA Canada's certificate of fitness by the CTA, the current extension for which expires on October 18, 2013. The Trustee believes that the Loan is in the best interests of the Debtor's estate and its creditors, as well as in the public interest under section 1165 of the Bankruptcy Code, as it will ensure that the Debtor has sufficient funds to continue operating pending a sale of its assets, and is secured by collateral that has already been pledged to the FRA.

23. Accordingly, the Trustee submits that the requirements of section 364(d) are satisfied with respect to the Loan.

WHEREFORE, the Trustee requests that the Court enter an Order: (i) approving the terms of the Loan upon the terms set forth herein and in the Commitment Letter; (ii) granting the Bank a first priority mortgage on the U.S. Real Property; (iii) granting the Bank a first priority security interest in the U.S. Personal Property; (iv) authorizing the Debtor to provide the Bank with an assignment of leases and rents relating to the U.S. Real Property; (v) determining that, to the extent applicable, the requirements of section 364(d)(1)(B) have been satisfied; and (vi) finding that the Bank acted in good faith in relation to the Loan under section 364(e) of the Bankruptcy Code.

Dated: October 4, 2013

ROBERT J. KEACH,
CHAPTER 11 TRUSTEE OF MONTREAL
MAINE & ATLANTIC RAILWAY, LTD.

By his attorneys:

/s/ *Sam Anderson*
Michael A. Fagone, Esq.
D. Sam Anderson, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street
P.O. Box 9729
Portland, ME 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127
E-mail: sanderson@bernsteinshur.com