UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re: ) | |
| ) | |
| MONTREAL MAINE & ATLANTIC ) | Bk. No. 13-10670 |
| RAILWAY, LTD. ) | Chapter 11 |
| ) | |
| Debtor ) | |

**GREAT NORTHERN PAPER'S MOTION TO TRANSFER PERSONAL INJURY TORT AND WRONGFUL DEATH CLAIMS PURSUANT TO 28 U.S.C. § 157(b)(5)**

Pursuant to 28 U.S.C. § 157(b)(5), GNP Maine Holdings, LLC, d/b/a Great Northern Paper Company, LLC ("GNP") hereby requests that this Court order that a certain wrongful death claim naming GNP and Debtor Montreal Maine & Atlantic Railway, Ltd. ("MMA") as defendants (among others) and currently pending in the Court of Common Pleas of Philadelphia County in Pennsylvania be transferred to this Court.

## FACTUAL BACKGROUND

GNP operates the Great Northern Paper mills in Millinocket and East Millinocket, Maine (the "GNP Mills"). According to the Trustee (as defined below), MMA operates an integrated, international shortline freight railroad system involving 510 route miles of track located in Maine, Vermont, and Québec. *Lac-Mégantic 157(b)(5) Motion* [as defined below] at 2. MMA provides rail freight service to the GNP Mills.

A lawsuit (the "Troester Case") was filed on or about February 19, 2013 by Sarah Troester, as Administratrix of the Estate of Jefferson Troester (the "Plaintiff"). The complaint filed by Plaintiff in the Troester Case (the "Complaint") alleges that on May 18, 2012, Jefferson Troester was killed while unloading cargo loaded by GNP from a freight rail car owned,

1

operated, maintained and supplied by MMA. *Complaint* at 8-9.[1] The Troester Case names eight defendants, including MMA and GNP. *Complaint* at 1-2.

On August 7, 2013, MMA filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "MMA Bankruptcy"). This Court has original and exclusive jurisdiction over MMA's chapter 11 case. *See* 28 U.S.C. § 1334(a). Pursuant to Local Rule 83.6(a) of this Court, the MMA Bankruptcy was referred to the United States Bankruptcy Court for the District of Maine (the "Bankruptcy Court"). On August 21, 2013 and pursuant to 11 U.S.C. § 1163, the United States Trustee appointed Robert J. Keach (the "Trustee") as the chapter 11 trustee in MMA's case.

The Plaintiff in the Troester Case filed a motion for relief from stay in the MMA Bankruptcy on October 8, 2013 (the "Motion for Relief from Stay"). Bkrtcy. Dkt. No. 327. On October 31, 2013, the Plaintiff voluntarily withdrew its Motion for Relief from Stay without prejudice. Bkrtcy. Dkt. No. 416.

Separately, on July 6, 2013, one of MMA's trains derailed in Lac-Mégantic, Québec (the "Derailment"). *Lac-Mégantic 157(b)(5) Motion* at 2. The Derailment is alleged to have killed 47 people. *Id.* Since then, thirteen lawsuits were filed in the Circuit Court of Cook County, Illinois in connection with the Derailment naming MMA as defendant. *Lac-Mégantic 157(b)(5) Motion* at 3. After MMA commenced its bankruptcy, seven additional lawsuits were commenced in the Circuit Court of Cook County, Illinois in connection with the Derailment that did not name MMA as a defendant. *Id.* As of September 10, 2013, and after being removed to federal court, nineteen of the twenty lawsuits remain pending in the United States District Court for the Northern District of Illinois (the "Lac-Mégantic Cases"). *Id.* at 4.

---

[1] Plaintiff's Complaint is attached as Exhibit A to Plaintiff's Motion for Relief from Stay. Bkrtcy. Dkt. No. 327.

2

On September 11, 2013, the Trustee filed a motion with this Court (the "Lac-Mégantic 157(b)(5) Motion") seeking similar relief in the Lac-Mégantic Cases now sought by GNP in the Troester Case: to transfer pending wrongful death lawsuits to this Court. *In re: Montreal Maine & Atlantic Railway, Ltd.*, Docket No. 1:13-mc-00184 (Doc. 1).

## DISCUSSION

The Troester Case should be transferred to this Court in order to promote centralization of MMA's pending bankruptcy case, for judicial economy, and to avoid the risk of inconsistent verdicts.

Section 157(b)(5) provides that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5). As the Trustee noted in the Lac-Mégantic 157(b)(5) Motion, "Section 157(b)(5) aims to centralize the adjudication of a bankruptcy case, and the plain language of the statute expressly confers authority on this Court to determine the proper venue for trial of the [Lac-Mégantic Cases]." *Lac-Mégantic 157(b)(5) Motion* at 4 (citing cases). The Lac-Mégantic Cases are wrongful death claims arising under state law in which multiple defendants have been named. The same is true of the Troester Case. In both the Lac-Mégantic Cases and the Troester Case, a train car or cars owned or leased by MMA was allegedly involved in the death or deaths at issue. While the Lac-Mégantic Cases arise out of a more dramatic accident, the claims asserted in them are at their core legally identical from a bankruptcy perspective to those asserted in the Troester Case.

In fact, the Troester Case is even more closely connected to the administration of MMA's bankruptcy than the Lac-Mégantic Cases: as the Trustee sets forth in the Lac-Mégantic 157(b)(5)

3

Motion, MMA has been dismissed from those Lac-Mégantic Cases in which MMA was named and was never named as a defendant in the remaining Lac-Mégantic Cases. *Lac-Mégantic 157(b)(5) Motion* at 3-4. In contrast, MMA is still named as a defendant in the Troester Case.

As the Trustee aptly observes in the Lac-Mégantic 157(b)(5) Motion, any wrongful death action (such as the Lac-Mégantic Cases or the Troester Case) that alleges wrongdoing on the part of MMA "will undoubtedly alter [MMA's] liabilities and impact the handling and administration of the estate." *Lac-Mégantic 157(b)(5) Motion* at 7. As the Trustee suggests, "[t]he costs associated with the discovery process alone will exhaust valuable resources of [MMA's] estate, and discovery and motion practice would be a significant burden on [MMA] while the Trustee attempts to maximize the value of the assets for the benefit of all creditors." *Id.* at 8. These arguments apply with equal validity to the Troester Case.

The Trustee also asserts that the Lac-Mégantic Cases should be transferred to this Court because he "anticipates that the non-debtor defendants will assert cross-claims against [MMA] that will likely include contribution and indemnification. Such cross-claims will certainly have an impact on [MMA's] liabilities." *Id.* In the Troester Case, no efforts to forecast the future are necessary: cross-claims against MMA have already been filed and will undoubtedly affect the outcome of the MMA bankruptcy.

The Plaintiff in the Troester Case will likely have to come to Maine to litigate its claims against MMA.[2] The majority of the other defendants in the Troester Case are national companies for whom the change in venue should not create any undue burden.

---

[2] The Plaintiff could, of course, renew its Motion for Relief from Stay. This seems unlikely, given the fact that it has already withdrawn one such motion and the Trustee vigorously opposed that prior motion.

Because it is in the public interest and the interests of all parties to the Troester Case to litigate the facts at issue there only once, and because any litigation against MMA will likely take place in Maine, this Court should transfer the Troester Case to this Court.

In opposition to this Motion, it may be argued that this Court should do nothing. *See, e.g., In re Pan American Corp.*, 950 F.2d 839, 844 (2d Cir. 1991) (stating that the court could abstain from action but refusing to do so). That same court observed that "Transfer should be the rule, abstention the exception," and "agree[d] with the leading commentator that 'the district court, if it elects to abstain and have the claim liquidated in state court, may be contravening the legislative history.'" *Id.* at 845 (quoting 1 L. King, Collier on Bankruptcy ¶ 3.01[3][b], at 3-82 (15th ed. 1991) and R. Aaron, Bankruptcy Law Fundamentals § 3.03[2], at 3-42 (1991) ("[t]he apparent intent [of § 157(b)(4) [*sic*]] is that these personal injury claims should not be returned to the state courts for trial"). Here, where the outcome of the Troester Case will impact the MMA Bankruptcy in a similar manner to the Lac-Mégantic Cases, all such wrongful death actions should be centralized in the same venue.

## Conclusion

The Troester Case should be transferred to this Court in conjunction with MMA's bankruptcy in order to promote centralization of MMA's pending bankruptcy case, for judicial economy, and to avoid the risk of inconsistent verdicts.

Dated: December 6, 2013 Respectfully submitted,

/s/ Thomas C. Newman
Thomas C. Newman, Esq.
tnewman@mpmlaw.com

/s/ Kelly W. McDonald
Kelly McDonald, Esq.
kmcdonald@mpmlaw.com

MURRAY PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME 04104-5085
(207)773-5651
(207) 773-8023 (Fax)

*Attorneys for* GNP Maine Holdings, LLC,
d/b/a Great Northern Paper Company, LLC