# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

In re:

MONTREAL MAINE & ATLANTIC
RAILWAY, LTD.

　　　　　　Debtor.

Bk. No. 13-10670

Chapter 11

Related to Docket No.:_____

## ORDER (I) APPROVING (A) SALE OF ASSETS PURSUANT TO ASSET PURCHASE AGREEMENT WITH RAILROAD ACQUISITION HOLDINGS LLC, (B) SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS, AND (C) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES THERETO AND (II) GRANTING RELATED RELIEF

This matter having come before the Court on the *Motion for Authority to Sell Substantially All of the Debtor's Assets and to Assume and Assign Certain Executory Contracts and Unexpired Leases* [D.E. 490] (the "Sale Motion"), filed by Robert J. Keach, as chapter 11 trustee (the "Trustee") for the estate of Montreal Maine & Atlantic Railway, Ltd. (the "Debtor") in the above-captioned case, seeking entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving (i) that certain Asset Purchase Agreement, dated as of December 12, 2013, as amended by that certain Amendment to Asset Purchase Agreement dated as of January 16, 2014 (including any amendments thereof and all schedules and exhibits thereto, the "Agreement"), a copy of which is attached as Exhibit B to the Declaration of Chapter 11 Trustee Concerning Auction, dated as of January 22, 2014 [D.E. 579] (the "Auction Report")[1], by and among Railroad Acquisition Holdings LLC, on the one hand, and the Trustee and Montreal Maine &

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion, Bid Procedures, Assumption and Assignment Procedures or Agreement, as applicable.

Atlantic Canada Co. ("MMA Canada" and, together with the Debtor, the "Sellers"), on the other

hand, providing for, among other things, the sale of substantially all of the assets of the Sellers

and the assumption and assignment of certain executory contracts and unexpired leases (the

"Sale") to Railroad Acquisition Holdings LLC or its assignee(s) (the "Purchaser"), (ii) the sale of

all of the Sellers' right, title and interest in, to, and under the Assets to the Purchaser free and

clear of any and all Liens, Claims, and Interests (as defined below) other than the Assumed

Liabilities; (iii) the assumption by the Sellers and the assignment to the Purchaser of the

Assigned Contracts and Leases pursuant to section 365 of the Bankruptcy Code and the

determination and satisfaction of cure amounts relating thereto; and (iv) granting related relief;

the Court having entered an order approving certain bid procedures dated December 19, 2013

[D.E. 535] (the "Bid Procedures Order"); the solicitation of bids and an Auction having been

conducted in accordance with the Bid Procedures Order; an Auction having been conducted on

January 21, 2014 in accordance with the Bid Procedures Order; at the conclusion of the Auction,

the Purchaser having been chosen as the Successful Bidder; the Court having reviewed the Sale

Motion and any objections thereto (the "Objections") and a hearing having been held on January

23, 2014 to approve the Sale to the Purchaser (the "Sale Hearing"); and all parties in interest

having been afforded an opportunity to be heard with respect to the Sale Motion and all of the

relief related thereto; and it appearing, based upon the pleadings, testimony proffered at the Sale

Hearing (including, without limitation, the written declarations of Thomas G. McCarthy, and

Ken Nicholson), the Auction Report, and statements of counsel made on the record at the Sale

Hearing, that the relief requested by the Sale Motion is in the best interests of the Debtor, its

estate, its creditors and other parties in interest, and is in the public interest; and after due

deliberation thereon and sufficient cause appearing therefore, it is hereby

FOUND AND DETERMINED THAT:[2]

A.     **Jurisdiction and Venue.**  This Court, pursuant to 28 U.S.C. §§ 157 and 1334, has

exclusive jurisdiction over all assets of the Debtor and its chapter 11 estate, including, without

limitation, the Assets and the Assigned Contracts and Leases.  Without limiting the generality of

the foregoing, this Court has exclusive *in rem* jurisdiction over the Assets pursuant to 28 U.S.C.

§ 1334(e), as such assets are property of the Debtor's chapter 11 estate, and, as a result of such

jurisdiction, the Court has all necessary power and authority to grant the relief contained herein.

This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N).  Venue of this

case and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.     **Statutory Predicates.**  The statutory and legal predicates for the relief sought in

the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, as supplemented by

Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014.  The consummation of the Sale as

contemplated by the Agreement and this Order is legal, valid and properly authorized under all

such provisions of the Bankruptcy Code and Bankruptcy Rules, and all of the applicable

requirements of such sections and rules have been complied with in respect of the Sale.

C.     **Notice.**  As evidenced by the affidavits and/or certificates of service and

publication notice filed with the Court and based on the representations of counsel at the Sale

Hearing, proper, timely, adequate and sufficient notice of the Sale Motion, the Bid Procedures,

the Sale, the Auction, the Assumption and Assignment Procedures, the proposed cure amounts

and the Sale Hearing, and all deadlines related thereto, has been provided under the

circumstances in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code and

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.  To the
extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent
any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Rules 2002(a), 6004(a), 6006(c), 9007, 9008 and 9014 and in compliance with the

Bid Procedures Order.  Actual written notice of the Sale Motion, the Bid Procedures, the Sale,

the Auction, the Assumption and Assignment Procedures, the proposed Cure Amounts, the Sale

Hearing, and all deadlines related thereto, was provided to all interested persons and entities,

including: (i) the United States Trustee; (ii) all known creditors, including, without limitation, all

plaintiffs and counsel in any and all lawsuits and other actions arising out of or related to the

Derailment (as defined in the Agreement); (iii) local, state and federal taxing authorities for each

jurisdiction in which the Assets are located; (iv) counsel to the Stalking Horse; (v) counsel to

MMA Canada; (vi) the Monitor; (v) counsel to the Monitor; (vi) all prospective bidders (or their

counsel) that are known to the Trustee and his advisors; (vii) all counterparties to the executory

contracts and unexpired leases; (viii) counsel to the Official Committee of Derailment Claimants;

(ix) counsel to the Maine Department of Transportation; (x) counsel to the Federal Railroad

Administration; (xi) the United States Environmental Protection Agency; (xii) the Town of Lac

Mégantic; (xiii) the Ministry of Sustainable Development, Environment, Wildlife and Parks;

(xiv) Transport Canada; (xv) the Ministry of Oceans and Fisheries; (xvi) the Ministere des

Affaires municipals, des Regions et de l'Occupation du territoire; (xvii) Environment Canada;

(xviii) the Vermont Agency of Transportation; (xix) the Maine Department of Labor; (xx) the

Maine Department of Environmental Protection; (xxi) the Maine Land Use Regulatory

Commission; (xxii) the Surface Transportation Board; (xxiii) all parties known to the Trustee to

have or assert any Liens, Claims, and Interests in or against any of the Assets; (xxiv) Bangor

Savings Bank; (xxv) Camden National Bank; (xxvi) Wheeling & Lake Erie Railway;

(xxvii) LMS Acquisition Corporation; and (xxviii) all other parties who have, as of the date of

the Sale Motion, entered an appearance and requested service of papers in this chapter 11 case

(collectively, the "Notice Parties").  (D.E. 549, 555,  572, and 575.)  The Publication Notice was

published in (a) the national edition of *The Wall Street Journal*, (b) the *Journal of Commerce*,

(c) the *Portland Press Herald*, (d) the *Globe & Mail*, and (e) the *Montreal Gazette* in accordance

with the Bid Procedures Order.  The Trustee and the Debtor provided notice of the potential

assumption and assignment of the Assigned Contracts and Leases and any Cure Amounts related

thereto to all counterparties to the Assigned Contracts and Leases in accordance with the Bid

Procedures Order and the Assumption and Assignment Procedures.  The notice described in this

Paragraph C is good, sufficient and appropriate under the circumstances, and no other or further

notice of the Sale Motion, the Auction, the Sale Hearing, the potential assumption and

assignment of Assigned Contracts and Leases (except as otherwise provided in the Assumption

and Assignment Protocol), the Cure Amounts, the Agreement, the Sale or this Order is or shall

be required.  With respect to any parties who may have claims against the Debtor, but whose

identities are not reasonably ascertainable by the Trustee or the Debtor, the publication of the

notice of Sale was sufficient and reasonably calculated under the circumstances to reach such

parties.

> D. **Opportunity to Object.**  A reasonable opportunity to object or be heard

regarding the relief granted by this Order, and the rights of third parties to submit higher or

otherwise better offers for the Assets, has been afforded to all interested parties and those parties

entitled to notice pursuant to the Bankruptcy Code and the Bankruptcy Rules.

> E. **Extensive Efforts by the Trustee and the Debtor.**  The Sale is the result of the

Trustee's extensive efforts in seeking to maximize recoveries to the Debtor's estate for the

benefit of creditors.

F.        **Business Justification.**  The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Assets.  In light of the circumstances of this chapter 11 case and the risk of deterioration in the going concern value of the Assets pending the Sale, time is of the essence in (i) consummating the Sale, (ii) preserving the viability of the Debtor's business as a going concern, (iii) minimizing the adverse economic consequences for the Debtor, its estate and its creditors and employees and (iv) assuring the continued operation of the Debtor's rail assets in the public interest.

G.        **Bid Procedures Order.**  On December 19, 2013, this Court entered the Bid Procedures Order approving the Bid Procedures for the sale of the Assets.  The Bid Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Assets.

H.        **Adequate Marketing; Highest or Otherwise Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, (a) the Trustee has adequately marketed the Assets and conducted the Auction and the sale process in compliance with the Bid Procedures Order; (b) a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Assets; (c) the consideration provided for in the Agreement constitutes the highest or otherwise best offer for the Assets; (d) the consideration provides fair and reasonable consideration for the Assets and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory or the District of Columbia; (e) the Sale will provide a greater value for the Debtor's estate than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase all of the Assets, nor

6

has any other entity (or combination of entities) offered to purchase any portion of the Assets, for greater value to the Debtor or its estate or on more favorable terms; (g) the Sale is in the public interest; and (h) the Trustee's and the Debtor's determination that the Agreement constitutes the highest and best offer for the Assets, that the Sale best satisfies the public interest, and that the Sale constitutes a valid and sound exercise of the Trustee's and the Debtor's business judgment.

I.       **Sale in Best Interests.**  The actions represented to be taken by the Trustee, the Sellers, and the Purchaser are appropriate under the circumstances of this chapter 11 case and are in the best interests of the Debtor, its estate and creditors and other parties in interest, and are in the public interest.  Approval of the Agreement and of the Sale at this time is in the best interests of the Debtor, its estate, its creditors and all other parties in interest, and is in the public interest.

J.       **Arm's-Length Sale.**  The Agreement and the Sale were negotiated, proposed and entered into by the Trustee, the Sellers and the Purchaser without collusion, in good faith, and based upon arm's-length bargaining.  Neither the Trustee, the Sellers, their insiders and affiliates, nor the Purchaser have engaged in any conduct that would cause or permit the Agreement or the Sale to be avoided under section 363(n) of the Bankruptcy Code.  The Purchaser is not an "insider" or "affiliate" of the Debtor or the Trustee (as such terms are defined in the Bankruptcy Code).

K.       **Good Faith Purchaser.**  The Purchaser is acting, with respect to the Agreement, the transactions contemplated thereby, the Auction, and this Sale Order, as a good faith purchaser, as that term is used in the Bankruptcy Code and is, accordingly, entitled to all of the protections set forth in section 363(m) of the Bankruptcy Code.  The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by this Agreement at all times after the entry of this Sale Order.

7

L.        **Prompt Approval.**  The Agreement and the Sale must be approved promptly
in order to preserve the viability of the Sellers' business as a going concern.

M.        **Corporate Authority.**  The Trustee and each of the Sellers (i) have full power
and authority to execute the Agreement and all other documents contemplated thereby, and the
sale of the Assets has been duly and validly authorized by all necessary corporate action of each
of the Sellers, (ii) have all of the power and authority necessary to consummate the transactions
contemplated by the Agreement, and (iii) need no consents or approvals, other than those
expressly provided for in the Agreement (which may be waived by the Purchaser) to
consummate such transactions.

N.        **Free and Clear Transfer Required by the Purchaser.**  The Purchaser would
not have entered into the Agreement and would not consummate the Sale if the sale of the Assets
to the Purchaser were not, pursuant to section 363(f) of the Bankruptcy Code, free and clear of
any and all Liens, Claims, and Interests as more fully set forth in paragraph 6 of this Order.

O.        **Satisfaction of Section 363(f) Standards.**  The Sellers may sell the Assets free
and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever, including
any rights or claims based on any putative successor or transferee liability, because, in each case,
one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been
satisfied.  In particular, (i) applicable non-bankruptcy law permits sale of the Assets free and
clear of any and all Liens, Claims, and Interests, (ii) each holder has consented to the sale and
transfer of the Assets free and clear of any Liens, Claims, and Interests it may have, with such
Liens, Claims and Interests to attach to the proceeds of such sale and transfer, as applicable,
(iii) to the extent that any such Liens, Claims, and Interests constitutes a Lien under applicable
non-bankruptcy law, the price at which the relevant property is to be sold is greater than the

8

aggregate value of all Liens on such property, (iv) such Liens, Claims, and Interests are in bona

fide dispute, or (v) each holder could be compelled, in a legal or equitable proceeding, to accept

a money satisfaction of any Liens, Claims, and Interests it may have.  All parties in interest,

including any holders of Liens, Claims, and Interests and any non-debtor counterparties to the

Assigned Contracts and Leases, who did not object, or who withdrew their objection, to the Sale

Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

P.      **Binding and Valid Transfer.**  The transfer of the Assets to the Purchaser shall be

a legal, valid, and effective transfer of the Assets and shall vest the Purchaser with all right, title,

and interest of the Sellers in, to and under the Assets free and clear of any and all Liens, Claims,

and Interests as set forth in this Order.

Q.      **Assigned Contracts and Leases.**  The Trustee and the Debtor have demonstrated

that it is an exercise of sound business judgment to assume and assign the Assigned Contracts

and Leases in accordance with the Assumption and Assignment Procedures in connection with

the consummation of the Sale, and that the assumption, assignment and cure of the Assigned

Contracts and Leases is in the best interests of the Debtor, its estate, its creditors and other

parties in interest.  The Assigned Contracts and Leases being assigned to the Purchaser are an

integral part of the Assets being purchased by the Purchaser, and accordingly, such assumption,

assignment and cure of the Assigned Contracts and Leases are reasonable and enhance the value

of the Debtor's estate.

R.      **Cure Amounts.**  The Trustee, the Debtor and/or the Purchaser have cured or

demonstrated their ability to cure any default with respect to any act or omission that occurred or

occurs prior to the Closing under any of the Assigned Contracts and Leases within the meaning

of section 365(b)(1)(A) of the Bankruptcy Code.  The Cure Amounts set forth in the Contract &

Cure Schedule are hereby deemed to be the only amounts necessary to cure any and all defaults

under the Assigned Contracts and Leases pursuant to section 365(b) of the Bankruptcy Code.

S.     **Adequate Assurance.**  Based upon the record of these proceedings, including the

evidence proffered by the Trustee at the Sale Hearing, the Purchaser has the financial

wherewithal and capability to fully perform its obligations under the Agreement, including the

payment of the purchase price and the future performance of its obligations under the Assigned

Contracts and Leases.  At the request of the Trustee, and to further evidence the Purchaser's

financial capacity, Fortress Worldwide Transportation and Infrastructure General Partnership

("FTAI") – an affiliate of Fortress Investment Group LLC -- executed and delivered to the

Trustee an equity commitment letter agreeing to backstop the Purchaser's obligations under the

Agreement.  Based upon the record of these proceedings, including the evidence proffered by the

Trustee at the Sale Hearing, FTAI has more than sufficient equity capital to perform all of the

Purchaser's obligations under the Agreement and the Assigned Contract and Leases.  In addition,

in accordance with the Bid Procedures, the Purchaser has expressed its commitment to operate a

railroad over all of the Assets that it proposes to acquire pursuant to the Agreement as a going

concern in the public interest, and has indicated that it has no present intention to abandon,

discontinue or limit any of the railroad lines that it proposes to acquire pursuant to the

Agreement.  Accordingly, the Court finds that the Purchaser is ready, willing and able to perform

all of its obligations under the Agreement, including, without limitation, the Assigned Contracts

and Leases, and that the Purchaser has provided adequate assurance of its future performance of

and under the Assigned Contracts and Leases pursuant to sections 365(b)(1) and 365(f)(2) of the

Bankruptcy Code.  The Purchaser is not assuming any obligation under or in connection with the

Assigned Contracts and Leases occurring or arising prior to the Closing Date except as provided in the Agreement.

T.     **Objections to Assumption and Assignment.**  All counterparties to the Assigned Contracts and Leases upon which the Sellers served a Contract & Cure Schedule and/or a Supplemental Notice who did not timely file and serve an objection to the assumption and assignment of the Assigned Contracts and Leases or relevant Cure Amount, are hereby deemed to have consented to (i) the assumption by the Trustee of their respective Assigned Contracts and Leases, (ii) the assignment of such Assigned Contracts and Leases to the Purchaser, and (iii) the relevant Cure Amount.  The following counterparties to the Assigned Contracts and Leases filed and served timely objections to the assumption and assignment of such parties' respective Assigned Contracts and Leases and/or Cure Amount relating thereto:

    i.     CIT Group/Equipment Financing, Inc., Flex Leasing I, LLC, and Flex Leasing II, LLC [D.E. 568];

    ii.    Rail World Locomotive Leasing, LLC [D.E. 570];

    iii.   Canadian Pacific Railway Co. [D.E. 573]; and

    iv.    Eastern Maine Railway Company and New Brunswick Southern Railway Company Limited [D.E. 571].

The foregoing parties are referred to collectively as the "Assumption and Assignment Objectors," and such parties' objections are referred to collectively as the "Assumption and Assignment Objections."  On or about January 22, 2014, the Trustee served a Supplemental Notice pursuant to the Assumption and Assignment Procedures (as defined in the Bid Procedures Order) upon the Assumption and Assignment Objectors and certain other parties notifying them that the Purchaser had informed the Trustee of its intention to refrain from selecting, and to

remove from the schedules of MMA Assigned Contracts, MMA Assigned Leases, MMA Canada

Assigned Contracts and MMA Canada Assigned Leases under the Agreement (collectively, the

"Assigned Contract Schedules"), the executory contracts and unexpired leases that are the

subject of the Assumption and Assignment Objections and certain other contracts and leases;

provided, however, that the entry of this Sale Order shall be without prejudice to any rights that

the Assumption and Assignment Objectors may have to assert their respective Assumption and

Assignment Objections pursuant to the Assumption and Assignment Procedures in the event that

the Purchaser subsequently determines to add any of the foregoing contracts or leases to the

Assigned Contract Schedules in accordance with the Agreement.  Accordingly, the Court hereby

determines that each of the Assumption and Assignment Objections is moot and is therefore

hereby overruled.

U.        **Requirements of Section 365(b) Satisfied.**  The Court finds that, with respect to

all Assigned Contracts and Leases, the payment of the Cure Amounts is appropriate and is

deemed to fully satisfy the Trustee's obligations under section 365(b) of the Bankruptcy Code.

Accordingly, all of the requirements of section 365(b) of the Bankruptcy Code have been

satisfied for the assumption and assignment by the Debtor to the Purchaser of each of the

Assigned Contracts and Leases.  To the extent any Assigned Contract or Lease is not an

executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be

transferred to the Purchaser in accordance with the terms of this Order and the Agreement, and

the Purchaser shall have no liability or obligation for any (a) defaults or breaches under such

Assigned Contracts and Leases that relate to acts or omissions that occurred, or otherwise arose,

prior to the date of the Closing; and (b) claims, counterclaims, offsets, or defenses (whether

contractual or otherwise, including without limitation, any right of recoupment) with respect to

such Assigned Contracts and Leases, that relate to any acts or omissions that arose or occurred prior to the date of the Closing.

V.     **Unenforceability of Anti-Assignment Provisions.**  Any anti-assignment or consent-to-assignment provisions in any of the Assigned Contracts and Leases shall not restrict, limit, impair, prohibit or otherwise affect the assumption and assignment of the Assigned Contracts and Leases and are deemed and found to be unenforceable pursuant to section 365(f) of the Bankruptcy Code.

W.     **Waiver of Stay.**  Under the circumstances of and on the record of this case, the Court hereby finds that good cause exists to waive and vacate the stays imposed by Rules 6004(h) and 6006(d).  Accordingly, such stays are hereby vacated and shall have no application to the relief afforded by this Order.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     **Sale Motion is Granted.**  The Sale Motion is granted, and the relief requested therein is granted and approved in its entirety, as further described herein.

2.     **Objections Overruled.**  All objections to the entry of this Order or the relief granted herein and requested in the Sale Motion, including any objections to the Sale, any Cure Amounts or the assumption and assignment of any of the Assigned Contracts and Leases, that have not been withdrawn, waived, rendered moot as set forth in recital paragraph T. above, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are denied and overruled on the merits with prejudice, except to the extent that rights and remedies are expressly preserved as to the Assumption and Assignment Objectors by the terms of this Order.

3.      **Approval.**  The Agreement, and all of its terms, conditions, schedules, exhibits

and ancillary documents, are fully and finally approved.  Pursuant to sections 105, 363, and 365

of the Bankruptcy Code, the Trustee and the Debtor are authorized and directed to take any and

all actions necessary to fulfill their obligations thereunder, and comply with the terms of, the

Agreement and to consummate the Sale pursuant to, and in accordance with, the terms and

conditions of the Agreement and this Order, without further leave of the Court.  The Trustee and

the Debtor are authorized to take any and all further actions as may reasonably be requested by

the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to

the Purchaser the Assets or as may be necessary or appropriate to the performance of the

obligations as contemplated by the Agreement without further leave of the Court.

4.      **Binding Effect of Order.**  This Order shall be binding in all respects upon all

known and unknown creditors of, and holders of equity interests in, the Debtor and any and all

other parties in interest, including, without limitation, any holders of Liens, Claims, and Interests

(including holders of any rights or claims based on any putative successor or transferee liability),

all counterparties to the Assigned Contracts and Leases, the Trustee, the Sellers and each of the

affiliates, subsidiaries, successors and assigns of each of the foregoing, provided, however, that

neither Section 2.7 nor Schedule 2.7 of the Agreement shall be binding on any parties other than

the Sellers and the Purchaser, and the rights of any lienholder to contest the allocation of value as

among assets, or as between the Debtor and MMA Canada, are expressly preserved.  Nothing

contained in any chapter 11 (or other) plan confirmed in the Debtor's chapter 11 case or any

order confirming any such plan shall, or shall be deemed to, alter, conflict with or derogate from

the provisions of this Order.

14

5.      **General Assignment.**   Upon the Closing, this Order shall be deemed to constitute

for all purposes a full and complete general assignment, conveyance, and transfer of all of the

Debtor's right, title and interest in, to and under the Assets and a bill of sale transferring good

and marketable title in the Assets to the Purchaser free and clear of all Liens, Claims, and

Interests of any kind or nature.   Each and every federal, state, and local governmental agency,

quasi-agency, or department is hereby directed to accept this Order and any and all documents

and instruments necessary and appropriate to consummate the transactions contemplated herein.

6.      **Transfer Free and Clear.**   Pursuant to sections 105(a) and 363(f) of the

Bankruptcy Code, upon the Closing, the Assets shall be transferred to the Purchaser free and

clear of any and all Liens, Claims, and Interests, with the sole exception of the Assumed

Liabilities.   For purposes of this Order, "Liens, Claims, and Interests" shall mean:

> (i) any and all liens (statutory or otherwise), charges, pledges, deeds of trust, rights of first refusal, rights of first offer, security interests, conditional sale agreements or other title retention agreements, leases, mortgages, options, proxies, hypothecations, voting trust agreements, transfer restrictions, restrictive covenants, rights of offset or recoupment, encroachments, encumbrances or any other property interest of any kind or nature whatsoever in the Assets (except for any easements or servitudes of record as of the Petition Date that run with the land under applicable non-bankruptcy law and may not be impaired under section 363(f) of the Bankruptcy Code) (collectively, "Liens");

> (ii) any and all Claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (a) any and all claims or causes of action based on or arising under any Environmental Laws (as defined in the Agreement) or that constitute Environmental Liabilities (as defined in the Agreement), (b) any and all claims or causes of action based on or arising under any tort, wrongful death, personal injury, property damage, strict liability, products liability, common carrier or similar liability, including, without limitation, any and all claims or causes of action arising out of or relating to the Derailment, under U.S., Canadian or other law asserted against the Trustee, any of the Sellers, or any of their respective affiliates, subsidiaries, directors, officers, agents, successors or assigns (collectively, the "Derailment Liabilities"), (c) any and all claims or causes of action based on or arising under any labor, employment or pension laws, (d) any and all claims or

causes of action based upon or relating to any putative successor or transferee liability, and (e) any and all other claims, causes of action, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against the Trustee, any of the Sellers or any of their respective affiliates, subsidiaries, directors, officers, agents, successors or assigns in connection with or relating to the Debtor, its operations, its business, its liabilities, the Trustee's marketing and bidding process, the Auction, the Assets, the Assigned Contracts and Leases, or the transactions contemplated by the Agreement (collectively, "Claims"); and

(iii) any and all equity or other interests of any kind or nature whatsoever in or with respect to (x) any of the Sellers or their respective affiliates, subsidiaries, successors or assigns, (y) the Assets, or (z) the Assigned Contracts and Leases (collectively, "Interests"),

whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing.  Any and all such Liens, Claims, and Interests shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force, and effect, if any, which they now have, subject to any claims, defenses and objections, if any, that the Trustee and/or the Debtor may possess with respect thereto.

Except for the Assumed Liabilities, the Sale shall be free and clear of, and the Purchaser shall not be responsible for, any Liens, Claims, and Interests, including, without limitation, any and all Derailment Liabilities, any and all Environmental Liabilities, any costs incurred and expenses paid or payable by the Sellers in connection with the administration of this Chapter 11 case or the Canadian Proceeding, including any professional fees, and any other Retained Liabilities.

16

7.      **Injunction.**  All persons and entities shall be, and are hereby, forever prohibited, enjoined and barred from taking any action that would adversely affect or interfere with the ability of the Trustee or the Sellers to transfer the Assets to the Purchaser in accordance with the terms of this Order and the Agreement.  Additionally, effective upon the Closing, except for those persons or entities entitled to enforce Assumed Liabilities, all persons and entities shall be, and hereby are, forever prohibited, enjoined and barred from asserting, prosecuting, or otherwise pursuing, whether in law or equity, in any judicial, administrative, arbitral or other proceeding, any Liens, Claims, and Interests of any kind or nature whatsoever, including, without limitation, any and all Derailment Liabilities, against the Purchaser, its affiliates and any of its and their respective officers, directors, managers, partners, employees, agents, representatives and advisors or any of their respective property, successor and assigns, or the Assets.

8.      **No Successor Liability.**  The Purchaser, its affiliates and its and their respective officers, directors, managers, partners, employees, agents, representatives and advisors shall not be deemed, (i) to be a "successor" to the Debtor or its estate, the other Seller, the Trustee or any of their respective directors, officers, agents, advisors, affiliates, subsidiaries, successors or assigns, (ii) to have merged, de facto or otherwise, with or into any of the Sellers, or (iii) to be an alter ego of, or a mere or substantial continuation of, any of the Sellers or the enterprise of the Sellers under any theory of law or equity as a result of any action (or omission) taken in connection with this Order, the Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Assets.  Without limiting the foregoing, the Purchaser, its affiliates and its and their respective officers, directors, managers, partners, employees, agents, representatives and advisors shall not have any successor, transferee, derivative, or vicarious liability of any kind or character with respect to any claims,

causes of action, rights or remedies against, or any liabilities or obligations of, the Debtor, the

other Seller, the Trustee or any of their respective directors, officers, agents, advisors, affiliates,

subsidiaries, successors or assigns arising out of or relating to the Derailment.

9.      **Exculpation.**  Neither the Purchaser, its affiliates, nor any of its and their

respective officers, directors, managers, partners, employees, agents, representatives and

advisors or any of their respective successors and assigns, shall have, or incur any liability to, or

be subject to any action by, the Trustee, the Debtor, the other Seller, or any of their affiliates,

subsidiaries, predecessors, successors, or assigns, arising out of the negotiation, investigation,

preparation, execution, or delivery of the Agreement, the entry of this Order,  and consummation

of the Sale and completion of any other transactions contemplated by the Agreement or any

related agreement, except as expressly provided in the Agreement and this Order.

10.      **Direction to Release Liens.**  Upon the Closing, each holder of a Lien, to the

extent any such holder contends that such Lien constitutes a valid, enforceable, non-avoidable

property interest in, on or to any of the Assets under applicable non-bankruptcy law, is

authorized and directed to execute such documents and take all other actions as may be

necessary to release such Lien in, on or to  the applicable Assets, if any, as such Lien may have

been recorded or may otherwise exist.  If any person or entity that has filed any financing

statements, mortgages, mechanic's liens, lis pendens, or any other documents, instruments or

agreements evidencing a Lien in, on or to any of the Assets shall not have delivered to the

Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, or releases of all Liens, which the person or

entity has with respect to the Assets or otherwise, then (i) the Trustee and the Debtor are

authorized to execute and file such statements, instruments, releases and other documents on

behalf of the person or entity with respect to the Assets and (ii) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order. This Order shall constitute conclusive evidence of the release of all Liens of any kind or nature whatsoever in, on or to the Assets, and shall be binding upon and shall govern the acts of all persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, notaries, prothonotaries, and all other persons or entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets or other property interests. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement, including, without limitation, recordation of this Order.

11.      **No Interference.** Following the Closing of the Sale, no person or entity shall interfere with the Purchaser's title to, or use and enjoyment of, the Assets based on, or related to, any Lien, Claim, and Interest, or based on any actions (or omissions) of the Trustee and/or the Debtor in this chapter 11 case.

12.      **Surrender of Possession.** All entities that are currently, or on the Closing may be, in possession of any or all of the Assets are hereby directed to promptly surrender possession of such Assets to the Purchaser on the Closing, unless the Purchaser otherwise agrees in writing.

13.      **Post-Closing Actions and Transactions.** The Trustee, the Debtor and the Purchaser, and each of their respective officers, employees, and agents, shall be authorized and

empowered to take all actions and to execute and deliver any and all documents and instruments

that the Trustee, the Debtor or the Purchaser deem necessary or appropriate to implement and

effectuate the terms of the Agreement and this Order.  Further, effective as of the Closing, the

Purchaser, its successors and assigns, shall be designated and appointed the Debtor's true and

lawful attorney-in-fact, with full power of substitution, in the Debtor's name and stead, to

demand and receive any and all of the Assets, and from time to time to institute and prosecute in

the name of the Purchaser, for the benefit of the Purchaser, its successors and assigns, any and all

proceedings at law, in equity, or otherwise, that the Purchaser, its successors or assigns, may

deem proper for the collection, possession, or enjoyment of any of the Assets, and to do all acts

and things with respect to the Assets that the Purchaser, its successors and assigns, shall deem

desirable.  All of the foregoing powers granted to the Purchaser are coupled with an interest and

are irrevocable by the Trustee and the Debtor.

14.    **Sale is Self-Executing**.  The Sale free and clear of Liens, Claims, and Interests is

self-executing, and neither the Trustee, the Debtor nor the Purchaser shall be required to execute

or file releases, termination statements, assignments, consents, or other instruments to effectuate,

consummate, and implement the provisions of this Order.

15.    **Assumption and Assignment of Contracts and Leases.**  Pursuant to sections

105(a), 363, and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of

the Sale, the Debtor's sale, assumption and assignment to the Purchaser of the Assigned

Contracts and Leases is approved, and the requirements of section 365(b)(1) of the Bankruptcy

Code with respect thereto are deemed satisfied.

16.    The Trustee is authorized and directed, in accordance with sections 105(a) and

365 of the Bankruptcy Code, to (i) to assume and assign to the Purchaser, effective as of the

Closing, in accordance with the Bid Procedures Order and the Agreement, the Assigned

Contracts and Leases free and clear of any and all Liens, Claims, and Interests of any kind or

nature whatsoever, other than the Assumed Liabilities, and (ii) to execute and deliver to the

Purchaser such documents or other instruments as the Purchaser may deem necessary to assign

and transfer the Assigned Contracts and Leases to the Purchaser.

17.     Upon Closing, the Assigned Contracts and Leases shall be transferred and

assigned to the Purchaser, and shall thereafter remain in full force and effect in accordance with

their terms for the benefit of, the Purchaser, notwithstanding any provision in any such Assigned

Contract or Lease (including those of the type described in sections 365(b)(2), (e)(1), and (f) of

the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer; and any

provisions in any Assigned Contract or Lease that prohibit or condition the assignment of such

Assigned Contract or Lease or terminate, recapture, impose any penalty, condition renewal or

extension, or modify any term or condition upon the assignment of such Assigned Contract or

Lease, shall constitute unenforceable anti-assignment provisions which are expressly preempted

under section 365 of the Bankruptcy Code and of no force and effect with respect to the

transactions contemplated under the Agreement.  All other requirements and conditions under

sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment

to the Purchaser of each Assigned Contract and Lease have been satisfied.

18.     All defaults and all other obligations or liabilities under any Assigned Contract or

Lease occurring, arising or accruing prior to the date of the assignment or transfer to the

Purchaser shall be deemed to have been cured or satisfied upon payment of the Cure Amount set

forth in the Contract & Cure Schedule (or any other cure amount reached by agreement after an

objection to the Cure Amount by a counterparty to an Assigned Contract or Lease), and, without

limiting the foregoing, no effect shall be given to any default of the type set forth in section

365(b)(2) of the Bankruptcy Code, or the type of default concerning an unexpired lease of real

property described in section 365(b)(1) of the Bankruptcy Code, whether or not such Assigned

Contract or Lease is an executory contract within the meaning of section 365 of the Bankruptcy

Code.  The Cure Amounts listed in the Contract & Cure Schedule, or any other cure amount

reached by agreement after an objection to the Cure Amount by a counterparty to an Assigned

Contract or Lease, reflect the sole amounts necessary under section 365(b) of the Bankruptcy

Code to cure any monetary defaults under the Assigned Contracts and Leases, and no other

amounts are or shall be due by the Purchaser (or any other party) to the non-debtor parties in

connection with the assumption by the Trustee and assignment to the Purchaser of the Assigned

Contracts and Leases.  Any non-monetary defaults under any Assigned Contract or Lease

occurring, arising or accruing prior to the date of the assignment or transfer to the Purchaser have

either been cured or the Trustee has provided adequate assurance that such non-monetary

defaults will be promptly cured upon Closing in accordance with section 365(b) of the

Bankruptcy Code.

19.     Except as provided in the Agreement or this Order, after the Closing, the Trustee,

the Debtor and its estate shall have no further liabilities or obligations with respect to any

Assigned Contract or Lease, and all holders of such claims arising from and after Closing under

any Assigned Contract or Lease are forever barred and estopped from asserting any claims under

any Assigned Contract or Lease against the Trustee, the Debtor and its estate.

20.     The failure of the Debtor or the Purchaser to enforce at any time one or more

terms or conditions of any Assigned Contract or Lease shall not be a waiver of such terms or

conditions, or of the Debtor's and the Purchaser's rights to enforce every term and condition of the Assigned Contracts and Leases.

21.    **Fair Consideration.**  The consideration provided by the Purchaser for the Assets under the Agreement is fair and reasonable, and the result of open and competitive bidding, and may not be avoided under section 363(n) of the Bankruptcy Code.  The consideration provided by Purchaser for the Assets under the Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtor under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Trustee nor the Purchaser has entered into the Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose.  No other person or entity or group of persons or entities has offered to purchase the Assets for an amount that would provide greater value to the Debtor and its estate than the Purchaser.  The Court's approval of the Sale Motion and the Agreement is in the best interests of the Debtor, the bankruptcy estate of the Debtor, its creditors and all other parties in interest, and is in the public interest.

22.    **Good Faith Purchaser.**  The Sale and any other transactions contemplated by the Agreement are undertaken by the Purchaser without collusion and in good faith in accordance with section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of any of the Assigned Contracts

and Leases) or the Agreement.  The Purchaser is a Purchaser in good faith of the Assets pursuant

to the Agreement and is entitled to all the protections afforded by section 363(m) of the

Bankruptcy Code.

23.     **No Bulk Law Application.**  No law of any state or other jurisdiction, including

any bulk sales law or similar law, shall apply in any way to the transactions contemplated by the

Sale, the Agreement, the Sale Motion, and this Order.

24.     **Exemption from Transfer Taxes.**  The transfers of the Assets pursuant to the

Agreement are transfers pursuant to the United States Bankruptcy Code under Me. Rev. Stat.

Ann. tit. 36, § 4641-C(14) and, accordingly, shall not be taxed under, and shall be exempt from,

any law imposing a stamp tax or a sale, transfer, or any similar or related tax assessed or imposed

by any governmental entity or unit, including the State of Maine and any local taxing authority.

25.     **Modification of the Automatic Stay.**  The automatic stay provisions of section

362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the

terms and conditions of the Agreement and the provisions of this Order.  The Trustee and the

Sellers irrevocably waive any right to seek any modification of this Order without the prior

written consent of the Purchaser, and no such consent shall be implied by any other action,

inaction or acquiescence by the Purchaser.

26.     **Inconsistencies with Prior Orders, Pleadings or Agreements**.  To the extent

this Order is inconsistent with any prior order or pleading in this chapter 11 case, the terms of

this Order shall govern and any prior orders shall be deemed amended or otherwise modified to

the extent required to permit consummation of the Sale.  To the extent there is any inconsistency

between the terms of this Order and the terms of the Agreement (including all ancillary

documents executed in connection therewith), the terms of this Order shall govern.

27.     **Failure to Specify Provisions.**  The failure to specifically include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

28.     **Non-Material Modifications.**  The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that (i) the Purchaser consents to any such modification, amendment or supplement in writing, and (ii) any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

29.     **No Stay of Order.**  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed and shall be effective immediately upon entry, and the Trustee, the Debtor, and the Purchaser are authorized to close the Sale at the earliest practicable time under the terms of the Agreement upon the entry of this Order; provided, however, that the efficacy of this Order is expressly conditioned upon the entry by the Canadian Court of a corresponding vesting order granting similar and consistent relief, including the approval of the sale of the MMA Canada Assets (as defined in the Agreement) to the Purchaser, in connection with the Sale Motion filed in the Canadian Case.

30.     **Time is of the Essence.**  Time is of the essence in closing the Sale.  The Court hereby determines that it is in the best interests of the Debtor's estate, and in the public interest, to close the Sale as soon as practicable in accordance with the Agreement.  The Court therefore respectfully requests that the Surface Transportation Board and the relevant Canadian regulatory authorities expedite their respective review processes, and render final decisions as soon as

practicable but in any event no later than March 14, 2014 (in order to enable closing of the transactions contemplated by the Agreement on or before March 31, 2014).

31.    **Non-severability.**    The provisions of this Order are non-severable and mutually dependent.

32.    **Retention of Jurisdiction.**    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Agreement, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; and (iii) protect the Purchaser against any Liens, Claims, and Interests against the Debtor or the Assets of any kind or nature whatsoever.

33.    **Back-Up Bids**.    Each of the following bids was accepted by the Trustee as a "Back-Up Bid," as such term is defined in the Bid Procedures:

a.    The bid of the Washington County Railroad Company for the Newport Subdivision Lot, which bid was submitted on January 15, 2014; and

b.    The joint offer and bid of Eastern Maine Railway Company and Springfield Railway Terminal Company for the Modified MMA Lot.

To the extent necessary, the Court approves these Back-Up Bids, and authorizes and orders the parties to perform their obligations under the Back-Up Bids in accordance with the Bid Procedures and the terms of the Back-Up Bids.

Dated: January 24, 2014

_____
Louis H. Kornreich
Chief United States Bankruptcy Judge