# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

---------------------------------------------------------------x
: 
In re                                                          :
                                                               :   Chapter 11
MONTREAL, MAINE & ATLANTIC                                     :
RAILWAY, LTD.,                                                 :   Case No. 13-10670 (LHK)
                                                               :
                Debtor.                                        :
                                                               :
---------------------------------------------------------------x

## APPLICATION OF THE CIT GROUP/EQUIPMENT FINANCING, INC. FOR PAYMENT OF ADMINISTRATIVE EXPENSE

The CIT Group/Equipment Financing, Inc. (the "*Claimant*") hereby submits this application for payment of its administrative expensein the amount of $163,123.31 (the "*Application*") against the estate of Montreal, Maine & Atlantic Railway, Ltd. ("*MMA*" or the "*Debtor*"). In support of this Application, the Claimant respectfully states as follows:

### Background

1.  On August 7, 2013 (the "*Petition Date*"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United Stated Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Maine (the "*Bankruptcy Court*"). On the same day, Montreal Maine and Atlantic Canada Co., MMA's wholly-owned subsidiary, filed an insolvency proceeding under Canada's *Companies Creditors Arrangement Act* in the Québec Superior Court.

2.  Prior to the Petition Date, the Claimant, the Claimant's predecessors, and MMA entered into the following equipment leases, all of which were unexpired as of the Petition Date: (i) Schedule Nos. 04, 05, 06, and 07 to that certain Master Railcar Lease, dated December 20, 2007 (the "*2007 Master Railcar Lease*"), (ii) Schedule Nos. 06 and 08 to that certain Master

Car Lease Agreement, dated May 28, 2004 (the "**2004 Master Railcar Lease**," the Schedules to the 2004 Master Railcar Lease, and any amendments thereto, and together with the 2007 Master Railcar Lease, and the Schedules to the 2007 Master Railcar Lease, and any amendments thereto, the "**Railcar Leases**"), and (iii) Schedule Nos. 01 and 02 to that certain Master Net Locomotive Lease, dated March 18, 2013 (the "**Locomotive Master Lease**," and together with the Schedules and any amendments thereto, the "**Locomotive Leases**," and collectively with the Railcar Leases, the "**Leases**").

3.  Pursuant to the Leases, the Claimant leased certain railcars (the "**Railcars**") and locomotives (the "**Locomotives**") to MMA (collectively, the "**Leased Equipment**"). By order dated May 27, 2014, the Bankruptcy Court approved the Debtor's rejection of the Leases effective as of May 15, 2014 (the "**Rejection Date**").[1]

4.  Prior to the Rejection Date, but subsequent to the Petition Date, the Debtor continued to use the Railcars pursuant to that certain *Stipulation and Order Among the Trustee, the CIT Group/Equipment Financing, Inc., Flex Leasing I, LLC and Flex Leasing II, LLC Approving Extension of Section 1168(a) Period*, dated September 27, 2013 (the "**1168 Stipulation**"), and approved by the Bankruptcy Court on October 3, 2013.[2]

5.  Prior to the Rejection Date, but subsequent to the Petition Date, the Debtor also continued to use certain of the Locomotives. On November 4, 2013, the Claimant and the Debtor entered into an amendment to Schedule No. 01 of the Locomotive Master Lease (the

---

[1] *Order Granting Chapter 11 Trustee's First Omnibus Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 365 for Authorization to Reject Executory Contracts and Unexpired Leases as of the Closing of the Sale of the Debtor's Assets*, entered on May 27, 2014 [Doc. No. 908].

[2] *Order Granting the Trustee's Motion for an Order Approving Stipulations to Extend the Time to Comply with Section 1168 and Address Matters Arising under Section 1168*, entered on October 3, 2013 [Doc. No. 332].

2

"*Locomotive Amendment*"), which provided the following terms with respect to the Locomotives leased pursuant to Schedule No. 01 to the Locomotive Master Lease: (i) the Debtor would pay CIT a fixed rent payment of $125 per unit per day, payable in arrears, and (ii) as of November 1, 2013, rent would accrue only if the relevant locomotives were used by the Debtor.[3] The Bankruptcy Court authorized the Debtor to enter into the Locomotive Amendment on November 1, 2013.[4]

6. Pursuant to an order, dated October 22, 2014, the Bankruptcy Court established December 1, 2014 as the deadline to assert certain administrative expenses against the Debtor (the "*Administrative ExpenseBar Date*").[5] As more fully described herein, the Claimant submits this Application for amounts and other obligations that are owed or may be owed to the Claimant by the Debtor that are required to be asserted by the Administrative Expense Bar Date.[6]

---

[3] *See* Locomotive Amendment ¶ 3.

[4] *See Order on Debtor's Motion for Entry of an Order Approving the Debtor's Rejection of Certain Leases*, dated November 1, 2013 [Doc. No. 421].

[5] *See Order Establishing the Deadline for Filing Administrative Claims and Approving the Form and Manner of Notice Thereof*, dated October 22, 2014 [Doc. No. 1164] (the "*Administrative Expense Bar Date Order*").

[6] On June 11, 2014, the Claimant filed a proof of claim, which was assigned claim number 105 ("*Claim 105*") for amounts owed to the Claimant, including certain amounts entitled to administrative expense priority pursuant to section 1171 of the Bankruptcy Code. Pursuant to section 1171(b) of the Bankruptcy Code and applicable law, the Claimant is entitled to receive certain amounts owed under the Leases that were earned or incurred during the six months prior to the Petition Date on an administrative priority basis. In accordance with the Administrative Expense Bar Date Order, the Claimant has not asserted any administrative expenses arising by operation of section 1171 of the Bankruptcy Code herein. The Claimant, however, reserves all rights with respect to these claims.

**Administrative Expenses**

**Legal Standard**

7. Section 503(b)(1)(A) of the Bankruptcy Code provides, in pertinent part, for the allowance as "administrative expenses . . ., [of] the actual and necessary costs and expenses of preserving the estate." Costs necessary to preserve the estate include costs related to the "postpetition operation of the business of the debtor." *In re Hemingway Transport, Inc.*, 954 F.2d 1, 5 (1st Cir. 1992). Accordingly, the First Circuit has held that, "as a general rule," a claim should be afforded administrative expense status if "(1) the right to payment arose from a postpetition transaction with the debtor estate . . ., and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." *Id*. Expenses related to the Debtor's postpetition use of the Railcars and Locomotives fall within the scope of this rule.

**Outstanding Postpetition Maintenance Obligations**

8. Pursuant to the Railcar Leases, the Debtor has maintenance obligations, including, among other things, paying certain service and repair costs and maintaining the Railcars in good operating condition.[7] The Debtor currently owes $366.61 related to maintenance performed and invoiced postpetition that falls within the Debtor's maintenance obligations (collectively, the "*Outstanding Postpetition Maintenance Obligations*"). A summary of the Outstanding Postpetition Maintenance Obligations, by invoice date and applicable Railcar Lease, is set forth on *Exhibit "A"* hereto.

9. The postpetition use of the Railcars was necessary to preserve the value of the Debtor's estate. As the trustee appointed in this chapter 11 case (the "*Trustee*")has acknowledged, the 1168 Stipulation—which allowed the Debtor to use the Railcars

---

[7]*See* 2004 Master Railcar Lease ¶ 12; 2007 Master Railcar Lease ¶ 4.

4

postpetition—was "a vital part of the Debtor's reorganization" because "the Debtor's ability to operate would be severely prejudiced" if it were forced to surrender its equipment, including the Railcars.[8] In the 1168 Stipulation, the Trustee specifically agreed to perform all obligations under the Railcar Leases, including, without limitation, its obligation to payits insurance and maintenance obligationsarisingafter October 1, 2013.[9] The Claimant is, therefore, entitled to payment of the Outstanding Postpetition Maintenance Obligations as an administrative expense.

**Outstanding Postpetition Locomotive Obligations**

10. Pursuant to Schedule No. 01 to the Locomotive Master Lease, as amended, the Debtor was required to pay a daily rental fee of $125 per locomotive for the five locomotives leased pursuant to such schedule until November 1, 2013 and an as-utilized rental fee of $125 per locomotive per day for the locomotives leased pursuant to such schedule after November 1, 2013. The Debtor retained and continued to use certain of the Locomotives until May 2014. Accordingly, the Claimant asserts an administrative expense in the amount of $57,125.00, representing the rental fees that accrued under Schedule No. 01 to the Locomotive Master Lease, as amended, from the Petition Date through May 2014 (the "*Outstanding Postpetition Locomotive Obligations*"). A summary of the Outstanding Postpetition Locomotive Obligations is set forth on **Exhibit "B"** hereto.

**Postpetition Damage to Locomotive**

11. Pursuant to the terms of the Locomotive Master Lease, the Debtor was obligated to maintain the Leased Equipment "in good repair, condition and working order" and

---

[8] *Trustee's Motion for an Order Approving Stipulations to Extend the Time to Comply with Section 1168 and Address Matters Arising Under Section 1168*, dated September 27, 2013 [Doc. No. 289] p. 6.

[9] 1168 Stipulation p. 3.

5

in a condition "suitable for immediate use in line-haul service on a Class I railroad."[10] The cost of repairing any damaged equipment that is leased pursuant to the Locomotive Master Lease is borne by the Debtor.[11]

12. The locomotive marked CITX 3097 ("**Locomotive CITX 3097**"), leased to the Debtor pursuant to Schedule No. 01 of the Locomotive Lease, was damaged postpetition, in late December 2013 or early January 2014 and was rendered inoperable. This damage was caused by exposure to freezing temperatures and directly resulted from the Debtor's failure to properly maintain and store Locomotive CITX 3097. The Claimant learned of this damage in late January 2014 and subsequently paid $105,631.70 to repair Locomotive CITX 3097.

13. The Claimant asserts an administrative expense for the reimbursement of the cost of repairing Locomotive CITX 3097 in the amount of $105,631.70, which is entitled to payment as an administrative expense as it arose postpetition. Receipts evidencing the cost of the repairs will be made available to the Trustee upon reasonable request.

### Reservation of Rights

14. The Claimant reserves the right to amend, modify, supplement, reclassify, or otherwise revise this Application at any time and in any respect, including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to provide additional detail regarding the expenses set forth herein, to assert additional grounds for any of the expenses, to reflect any and all additional administrative expenses of whatever kind or nature that the Claimant has or may have against MMA or its estate, or to attach or submit additional documents supporting this Application that may become available after further investigation and discovery.

---

[10] *Master Net Locomotive Lease* at ¶ 5(B).

[11] *Master Net Locomotive Lease* at ¶ 9(A).

6

15. The Claimant reserves the right to file additional applications for administrative expenses with respect to expenses that are not required to be asserted by the Administrative Expense Bar Date.

16. Neither this Application nor any of its contents shall be deemed or construed as an acknowledgment or admission of any liability or obligation on the part of the Claimant. The Claimant specifically reserves all of its defenses and rights, procedural and substantive.

17. The Claimant does not waive or release, and expressly reserves, all rights and remedies at law or in equity that it has or may have against the Debtor or the Debtor's estate, including, without limitation, a right to subrogation under section 509 of the Bankruptcy Code.

### Right of Setoff and Recoupment

18. The Claimant reserves all rights of setoff and recoupment that it may have, including its right to recoup any amounts asserted herein or to exercise its setoff rights with respect to any amounts asserted herein. To the extent the Trustee on behalf of the Debtor asserts any claim against the Claimant, the Claimant shall have a secured claim to the extent of its right of setoff under section 553 of the Bankruptcy Code.

### Notice

19. Copies of all notices and communications concerning this Application should be sent to:

> Mr. James Pacelli
> Vice President and Chief Risk Officer – Rail
> The CIT Group/Equipment Financing, Inc.
> 30 South Wacker Drive, Suite 2900
> Chicago, Illinois 60606

**With a copy to:**

    Debra A. Dandeneau, Esq.
    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: debra.dandeneau@weil.com

*Attorneys for the Claimant*

### Supporting Documentation

20.    The Trustee and/or the Debtor have or should have copies of the Leases, outstanding invoices, and any other documents referenced herein. Due to the voluminous, confidential and/or commercially sensitive nature of the Leases and other supporting documents, such documents are not attached hereto. Copies of the Leases, outstanding invoices, and any other documents referenced herein will be made available to the Trustee upon reasonable request.

WEIL:\95137604\6\35839.0018

## **Conclusion**

For the foregoing reasons, the Claimant should have an allowed administrative expense in the amount of $163,123.31.

Dated: November 24, 2014.

           Respectfully Submitted,

           /s/ Edward S. MacColl
           Edward S. MacColl
           Thompson, Bull, Furey, Bass & MacColl
           120 Exchange Street
           P.O. Box 447
           Portland, ME 04112
           (207) 774-7600

           -and-

           Marcia L. Goldstein
           Debra A. Dandeneau
           Weil, Gotshal & Manges, LLP
           767 Fifth Avenue
           New York, NY 10153
           Telephone:  (212) 310-8076
           Facsimile:  (212) 310-8007
           Email:  marcia.goldstein@weil.com
                    debra.dandeneau@weil.com

           *Attorneys for TheCIT Group/Equipment Financing, Inc., Flex Leasing I, LLC, and Flex Leasing II, LLC*

## CERTIFICATE OF SERVICE

    I, Edward S. MacColl, attorney for CIT Group, Inc., do hereby certify that on November 24, 2014, I made due service of the above filing by electronically filing the same and using the Court's CM/ECF system.

                                        /s/ Edward S. MacColl
                                        Edward S. MacColl, MBRN # 2658
                                        Attorney for CIT Group, Inc.

THOMPSON, BULL, FUREY,
BASS &MacCOLL, LLC, P.A.
120 Exchange Street
P.O. Box 447
Portland, ME  04112-0447
(207) 774-7600
<*emaccoll@thomport.com*>