UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MONTREAL, MAINE & ATLANTIC RAILWAY, LTD.,** | ) ) | Case No.: 13-10670 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

# ORDER

This matter came before me on the objection of Robert J. Keach, the representative (the "Estate Representative") of the estate of Montreal Maine & Atlantic Railway, Ltd. (the "Debtor")[1] to Proofs of Claim No. 116-1 and 116-2 filed by Center Beam Flatcar Company ("Center Beam"). Based upon the arguments of counsel at hearing and their submissions, and for the reasons set forth below, the Estate Representative's objection is sustained. The entire Claim 116-1 and a portion of Claim 116-2 ($83,403.23) are disallowed.

## I. JURISDICTION AND VENUE.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and the general order of reference entered in this district pursuant to 28 U.S.C. § 157(a). D. Me. Local R. 83.6(a). Venue here is proper pursuant to 28 U.S.C. § 1408(1). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(B).

---

[1] In accordance with the Trustee's Chapter 11 Plan of Liquidation, dated July 15, 2015 (As Amended on October 8, 2015) (the "Plan") (Docket Entry ("DE") 1822), upon the Effective Date of the Plan (which occurred on December 22, 2015, see DE 1927), Robert J. Keach was no longer the chapter 11 trustee of the Debtor's estate, but is the Estate Representative of the Post-Effective Date Estate (as defined in the Plan). See Plan § 6.1(a).

**II. FACTS.**

This dispute is straightforward and the facts are not contested. The Debtor leased up to 95 centerbeam railroad flatcars from Center Beam pursuant to a January 13, 2003 lease (the "Lease"). On July 6, 2013, the Debtor's trains derailed in Lac-Mégantic, Québec causing catastrophic damage to the people and town of Lac-Mégantic. One month later, on August 7, 2013, the Debtor filed a voluntary petition for relief commencing a case under chapter 11 of the Bankruptcy Code[2] in the United States Bankruptcy Court for the District of Maine. Subsequently, the railroad cars subject to the Lease were returned to Center Beam, though that process took additional time because they were scattered across the country.

On August 21, 2013, the Debtor filed a motion to reject certain executory contracts and unexpired leases (including the Lease) that were, according to the Debtor, of no value to the estate (DE 66). Center Beam objected to the motion (DE 277). Subsequently, the parties reached a deal whereby Center Beam consented to the granting of the motion, *nunc pro tunc*, and reserved the right to argue at a later time as to the extent and priority of its claim against the Debtor (DE 421). On November 1, 2013, the Court granted the motion and the Lease was rejected, *nunc pro tunc* back to the petition date (DE 421). On June 12, 2014, Center Beam filed Claim 116-1. The next day it filed Claim 116-2. The claims are identical except Claim 116-1 was signed by Center Beam's attorney and Claim 116-2 was signed by its president. Claim 116-2 asserts an unsecured claim totaling $372,095.47, of which $288,692.24 is a general unsecured claim for pre-petition rents, transportation, stenciling, retagging and decals, and $83,403.23 is for "[a]ccrued unpaid post-petition rent". The Estate Representative objected (DE 2025), Center

---

[2] All references to the "Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, et seq.

Beam responded (DE 2066), and the Estate Representative filed a reply in support of his objection (DE 2114).

### III.  BURDEN OF PROOF.

Given that the Estate Representative sufficiently objected to Center Beam's claims, the burden shifts to Center Beam to prove, by a preponderance of the evidence, that its claim should be allowed.  Bankr. Evid. Manual § 301:50 (2014 ed.).

### IV.  DISCUSSION.

The parties agree that Center Beam is entitled to a general unsecured claim of $288,692.24 and the sole unresolved issue between the parties concerns the treatment of the $83,402.53 portion of Claim 116-2.  Center Beam asserts that it is entitled to an <u>unsecured</u> (not administrative) claim for $83,402.53 which is the amount of post-petition rent as lease rejection damages.  Center Beam believes it is entitled to this rent because the Lease provides that upon breach by the Debtor, Center Beam "shall be entitled to collect and receive any and all rents and other amounts that under the terms of this Lease may then be due <u>or that have accrued to the date of such delivery [of the railroad cars] to the Owner</u> . . ." (Claim 116-2, page 11) (emphasis added).   Thus, Center Beam argues that it is entitled to an unsecured claim for the amount due in lease payments until all of the rail cars were returned to Center Beam.  The Estate Representative disagrees.

The answer lies in the interplay between §§365, 502 and 503 of the Code. Section 365 allows a debtor in possession to assume or reject unexpired leases.  Section §365(g)(1) provides that the rejection of an unexpired lease constitutes a breach of the lease as of the day before the petition date and §502(g)(1) tells us that rejection claims arising under §365(g)(1) shall be determined as if the claim arose before the petition date.   Finally, §503(b)(1) permits the

allowance as administrative expenses actual, necessary costs and expenses of preserving the estate.

Turning to the rejection aspects of Center Beam's claim, Center Beam concedes that the Debtor was not benefited by the Lease following the rejection date and therefore is not entitled to an administrative claim under §503(b)(1), but it asserts, based upon the language of the Lease, an unsecured claim for the rents that accrued until the railroad cars were returned to it.[3] Center Beam has offered no authority to support this proposition and I have been unable to find any. The Code allows the payment, as administrative expenses, of certain post-rejection commercial property lease claims when those expenses were necessary for the preservation of the estate. §§ 365(g)1), 502(g) and 503(b)(1). It does not permit the payment of such lease payments as unsecured claims in situations like this one where it is undisputed that the Lease did not benefit the estate in any way post-rejection. Nor can Center Beam use the provision in the Lease cited above to make an end run around the provisions of the Code. Since damages are fixed as of the petition date, the fact that it took some time post-petition to deliver the rail cars to Center Beam (and during which time it is undisputed that the estate did not benefit from the use of the cars) should not be included in Center Beam's claim. To paraphrase the First Circuit in the Public Service Co. of New Hampshire case, if Center Beam thought that there was some "manifest unfairness" in requiring it to wait while the Debtor decided to "embrace or jettison" the Lease, it could have filed a motion to compel election under § 365(d)(2). In re Pub. Serv. Co. of New Hampshire, 884 F.2d 11, 15–16 (1st Cir. 1989); see also In re Enron Corp., 354 B.R. 652, 659

---

[3] Unfortunately, §502 of the Code does not provide a clear method for the calculation of damages for the breach of commercial personal property leases, as does §502(b)(6) for real property leases. See In re Maupin, 165 B.R. 864, 866, 30 Collier Bankr. Cas. 2d 1758, Bankr. L. Rep. P 75843, 1994 WL 120148 (Bankr. M.D. Tenn. 1994).

(S.D.N.Y. 2006). It did not do so and the record before me is bare of any other steps Center Beam took to hasten the return of the cars.

Center Beam has not carried its burden of proof and the Estate Representative's objection to the $83,403.53 portion of Center Beam's Claim 116-2 is sustained.

Date: August 25, 2016                    /s/ Peter G. Cary
                                         Peter G. Cary
                                         United States Bankruptcy Judge